BLACKFORD COUNTY BANK *v.* EATON STATE BANK.

[No. 11,048. Filed April 4, 1922. Rehearing denied June 28, 1922. Transfer denied March 20, 1924.]

1. TRIAL.—*Special Findings.—Conclusions of Law.*—In an action by one bank against another for the amount of a dishonored check, where the theory of the complaint was that certain money and drafts were deposited with the defendant bank for the purpose of paying said check, a finding that said money and drafts were deposited in said bank "in trust" and a finding that drafts deposited on a certain day "became a specific fund under said agreement to pay said check" were conclusions of law. p. 268.

2. TRIAL.—*Special Findings.—Sufficiency to Sustain Conclusions of Law.*—In an action by one bank against another for the amount of a dishonored check, a finding that there was an agreement between the parties that certain money and drafts were to be deposited in the defendant bank for the specific purpose of paying checks drawn by one of defendant's depositors in favor of the plaintiff bank and that they were deposited pursuant to that agreement, is a sufficient finding of facts to sustain a conclusion of law that the drafts and the money derived therefrom constituted a trust fund for the purpose of paying the check. p. 269.

3. FRAUDS, STATUTE OF.—*Parol Agreement to Pay Another's Debt.*—A parol agreement between two banks and a depositor that all money and drafts from a specified source deposited in one of such banks were to become a trust fund for the payment of checks drawn by the depositor in favor of the other bank is not a parol agreement to answer for the debt of another, and void under the statute of frauds, but money and drafts deposited pursuant to such agreement become a special deposit for that purpose, and constitute a trust fund which the bank cannot apply to the payment of the depositor's debts to it. p. 269.

4. NEW TRIAL.—*Grounds for.*—That a special finding is contrary to the undisputed evidence is properly presented by the

specification in a motion for a new trial that the finding is not sustained by sufficient evidence.  p. 270.

5.  APPEAL.—*Weighing Evidence.*—An appellate tribunal cannot weigh the evidence, and where the evidence is conflicting, the judgment must be affirmed if there is any evidence to support the trial court's finding.  p. 270.

From Jay Circuit Court; *Theodore Shockney,* Special Judge.

Action by Eaton State Bank against the Blackford County Bank and another.  From a judgment for plaintiff, the defendant bank appeals.  *Affirmed.*

*Moran & Gillespie* and *William H. Eichhorn,* for appellant.

*Leffler, Ball & Leffler,* for appellee.

McMAHAN, J.—Complaint by appellee, Eaton State Bank, against appellant, Blackford County Bank, and David W. Gregory on account of a check for $3,400. given by Gregory to appellee and drawn on appellant bank.  It is alleged that the check was dishonored after being accepted by appellant.  Appellant contends that the dishonoring was in the due course of business and for want of funds to the credit of Gregory.  Appellant filed a set-off in two paragraphs, alleging that appellee was indebted to it in the sum of $572.55, growing out of banking relations between appellant and appellee.

Since the facts were found specially and no question is raised on the pleadings, it will not be necessary to set them out in detail.

The facts found by the court are in substance as follow:  In December, 1911, and for many years prior thereto and ever since said time, appellee has been located and doing a general banking business at Eaton in Delaware County, during which time Carl VanBuskirk was the cashier thereof.  During the same time, appellant has been located and doing a general banking business at Hartford City, Blackford County, during

which time Ambrose G. Lupton was president thereof. David W. Gregory resided in Hartford City during 1909, 1910, 1911, and 1912, during all of which time he was engaged in buying and shipping live stock which he purchased from farmers in Blackford and adjoining counties and which he shipped to Buffalo and other markets where the same was sold. In paying for such stock, Gregory drew checks on appellant, all of which were honored by appellant during the years 1909, 1910, and until some time in December, 1911. After purchasing such stock and paying for them, Gregory either drew, or directed appellant to draw, drafts against the stock when shipped, which drafts were all deposited in appellant bank to the credit of Gregory to pay the checks drawn upon it by Gregory in payment for said stock so purchased by him. During 1909, 1910, and a portion of 1911, Gregory also purchased stock in the northern part of Delaware County in the vicinity of Eaton and in payment for such stock, issued checks drawn by him upon appellant bank, some of which checks were presented to appellee and were honored and paid by it, after which, appellant paid said checks and reimbursed appellee. About December 14, 1911, it was agreed between Gregory and appellee and appellant that Gregory should draw checks on appellee bank for all stock purchased by him in the vicinity of Eaton and that said checks, when so drawn by Gregory, should be presented to and paid by appellee, and that after said checks were drawn in payment for said stock, the amount of them should be ascertained and Gregory was to and did deliver to appellee bank a check on appellant for the aggregate amount of the checks so drawn by him on appellee in payment for said stock and that appellee should and did forward said checks so drawn by Gregory on appellant to appellant for collection and to be placed to the credit of appellee. All of said checks

so drawn in favor of appellee upon appellant by Gregory were mailed to appellant and honored and credited to the account of appellee pursuant to said agreement except one for $3,400 hereinafter referred to. It was further agreed that the money received from the sale of the stock so paid for by appellee by checks so drawn by Gregory on appellee were all to be deposited, and were deposited, pursuant to said agreement in appellant bank to the credit of Gregory, in trust for the specific purpose and not otherwise, of taking up and paying the checks so given appellee by Gregory on appellant. All the money realized from the sale of the stock purchased in the vicinity of Eaton and paid for by appellee, and all the money realized on sight drafts drawn against said stock when shipped and sold, was to be and was deposited in appellant bank under said agreement to the credit of Gregory, in trust for the specific purpose of paying the checks drawn by Gregory on appellant in favor of appellee. None of said drafts or money realized from the sale of said stock was ever deposited in appellee bank. Under this arrangement, appellee was to be benefited by having Gregory draw checks upon it and having the farmers come to it for the payment of said checks, while appellant was to be benefited by having all the money received from the sale of said stock deposited with it. Under this arrangement, Gregory purchased a large amount of stock in the vicinity of Eaton, drawing checks on appellee, and which were paid by appellee, after which Gregory drew checks on appellant in favor of appellee to reimburse appellee for the checks so drawn on it by Gregory and which it had paid. The dates and amounts of said checks are as follows: December 14, $408.85; December 20, 1911, $1,454.28; December 26, 1911, $3,378.56; December 28, 1911, $1,809.96; January 3, 1912, $1,100; January 6, 1912, $800; January 10, 1912,

$1,060.90; January 17, 1912, $1,782.15; January 20, 1912, $905.35; January 31, 1912, $1,300; February 7, 1912, $2,786.99; February 10, 1912, $1,463.02; February 12, 1912, $1,837.46; February 17, 1912, $1,573.97. All of these checks were forwarded by appellee to appellant and were paid by appellant and credit given on its books to appellee pursuant to said agreement.

February 24, 1912, Gregory purchased stock in the vicinity of Eaton and pursuant to said agreement gave checks aggregating $3,376.15. All of said checks were paid by appellee, and Gregory, on said day, for the purpose of reimbursing appellee, drew his check for $3,400 on appellant in favor of appellee according to said agreement. Gregory, having shipped said stock, drew two drafts against the same and deposited them in appellant bank to his credit. Appellant on February 26, 1912, acknowledged the receipt of said $3,400 check, and by mail notified appellee in writing, and therein stated, "Draft not in. Probably be taken care of tomorrow." February 29, 1912, said drafts so deposited in appellant bank by Gregory and drawn upon the stock purchased by Gregory at Eaton were paid to appellant and placed to the credit of Gregory, and became a special fund under said agreement with which to pay said $3,400 check. At the time said drafts were paid, and when they were credited to the account of Gregory by appellant, said check for $3,400 was in appellant bank and unpaid. Appellant instead of paying said $3,400 check as provided in said agreement transferred to itself from the account of Gregory $1,142.99 in payment of an indebtedness which Gregory then owed appellant, after which there were insufficient funds in appellant bank to Gregory's credit to pay said $3,400 check. Appellant between February 26 and 29, while it had said $3,400 check for collection, diverted from the account of Gregory and out of the proceeds derived from the sale

of said stock purchased February 24, and paid for by appellee, $1,142.99 to the payment of the debt owed appellant by Gregory. The amount so diverted by appellant to the payment of the debt owed it by Gregory, was held by appellant for the specific purpose of paying said $3,400 check and to reimburse appellee. Said stock purchased by Gregory February 24, and which was paid for by appellee, was shipped by Gregory and sold for more than $3,500, all of which was deposited in appellant bank to the credit of Gregory, and by said agreement, $3,400 of said sum was placed in appellant bank by Gregory for the specific purpose of paying the $3,400 check given by Gregory to appellee.

February 29, 1912, Gregory paid appellee by check on appellant, $2,257.01, and appellee credited said sum on said $3,400 check and appellant paid said check for $2,257.01 and gave appellee credit therefor.

Appellant tendered appellee Gregory's note for $1,142.99 that being the balance due on said $3,400 check, which note appellee then and ever since has refused to accept. Appellee on February 29, 1912, demanded payment of said $1,142.99, that being the balance due on said $3,400 check, of Gregory and appellant, which demand was refused, and said sum is still owing appellee, and appellee is entitled to interest thereon since February 29, 1912. At the time said note was tendered appellee, Gregory was insolvent. On and prior to October 23, 1912, appellant had paid out for the use and benefit of appellee and at its instance and request $551.59, and was entitled to interest thereon in the sum of $263.25.

Upon these facts, the court concluded, as a matter of law, (1) that the law was with appellee on the issues joined upon the complaint; (2) that the law was with appellant on the issues joined upon the cross-complaint; (3) that appellee was entitled to recover from appellant

$919.00, that being the difference between the amount appellee owed appellant and $1,738.84, the amount which appellant owed appellee; and (4) that appellee is entitled to recover costs on issues joined upon the complaint.

Appellant excepted to conclusions of law Nos. 2, 3, and 4, and, in support of its exceptions, contends: first, that the statements in the finding that the money received from the sale of live stock paid for by appellee was deposited in appellant bank to the credit of Gregory in trust for the specific purpose and not otherwise of taking up and paying the checks, and in trust for the specific purpose of paying the $3,400 check, are legal conclusions and not statements of facts.

It is to be observed that in the findings assailed by appellant, the court found what the agreement between appellant and appellee was in relation to the method of paying for the stock and the depositing of the money which Gregory derived from the sale of the stock.

The first finding which appellant contends is a conclusion of law, is that "It was further agreed the money received from the sale of live stock so paid for by said Eaton State Bank upon the checks drawn by said Gregory was all to be deposited and it was deposited, pursuant to said agreement, in said Blackford County Bank to the credit of said David W. Gregory in trust for the specific purpose and not otherwise of taking up and paying the checks so drawn to said Eaton State Bank" by Gregory on appellant. The next finding is that all money realized from the sale of said live stock paid for by appellee, "was to be and were deposited" in appellant bank to the credit of Gregory "in trust for the specfic purpose of paying the checks drawn" by Gregory on appellant in favor of appellee. By these findings, the court not only found what the agreement was, but it found that the money was deposited with appellant "pursuant to said agree-

ment." The agreement was that the money should be deposited "in trust" for a specific purpose. And the court expressly found that the money was deposited with appellant, and that it was deposited pursuant to said agreement.

It may be conceded that the finding that it was deposited "in trust" is a conclusion of law and must be ignored, but enough remains to show that there was an agreement that it was to be deposited in trust for a specific purpose pursuant to that agreement. It may also be conceded that the finding that the two drafts deposited with appellant February 29, 1912, "became a specific fund under said agreement to pay said $3,400 check" is a conclusion of law. Eliminating this statement as a conclusion of law, the fact that there was an agreement that they should be deposited in trust for that purpose, together with the finding that they were deposited in fact, pursuant to that agreement, is a sufficient finding of facts to support the court in concluding, as a matter of law, that the drafts and the money derived therefrom constituted a trust fund for the purpose of paying the $3,400 check held by appellee.

Appellant contends that under the facts as found the agreement between appellant and appellee is no more than an agreement in parol to answer for the debt of another, and void under the statute of frauds, and also that it can amount to no more than an agreement on the part of appellant to guarantee the payment of Gregory's checks. We do not think the agreement between the parties as found by the court is susceptible of the construction which appellant would have us place upon it. There is no question but that checks or money may be deposited in a bank for the purpose of creating a fund for the payment of a specific debt. When this is done, the deposit becomes a

special deposit for that purpose.   It, in law, becomes a trust fund.   The facts as found by the court are such as to impress the proceeds arising from the sale of the live stock paid for by appellee and deposited with appellant with a trust for the purpose of reimbursing appellee.   There was, therefore, no error in the conclusions of law.

Appellant's next proposition is that the court erred in overruling its motion for a new trial, the specifications of which are that the findings are not sustained by sufficient evidence and are contrary to law.   No attempt has been made to show wherein the findings are contrary to law.   They are all within the issues, and as we view them, are not contrary to law.   If they are contrary to the undisputed evidence, the question is presented by the specification that the finding is not sustained by sufficient evidence.   *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237; *Sharp* v. *Malia* (1890), 124 Ind. 407; *Todd* v. *Howell* (1911), 49 Ind. App. 59, cited by appellant in support of the proposition that a "finding unsupported by the evidence is contrary to law" do not so hold.   The holding in each of these cases is that where the court fails to find all the facts proved, or finds the facts contrary to or unsupported by the evidence, the remedy of the aggrieved party is by motion for a new trial.   There is no intimation in either of these cases as to what the specifications for a new trial should be.

The evidence in this case as to whether there was an agreement between appellant and appellee and Gregory is in irreconcilable conflict.   The cashier of appellee bank testified that he had a talk with the president of appellant and detailed that conversation.   The president of appellant testified that he never had any such conversation with the cashier of appellee; that there was never any conversation between

Blackford Co. Bank *v.* Eaton State Bank—81 Ind. App. 262.

them relative to Gregory's business or his manner of doing business. This court is not called upon to pass upon the credibility of either of these men. That was the duty of the trial court and not ours. If there is any evidence to support the finding that there was an agreement as found by the court and that the money derived from the sale of the stock which was deposited in appellant bank pursuant to that agreement, the judgment must be affirmed. This is not a case where the witnesses disagreed as to what was said or what their understanding was, or what the agreement was. The only witness who testified to the conversation and as to what was said, was the cashier of appellee. The president of appellant, having denied that any arrangement was made relative to the matter and that there was no conversation about that subject, it became necessary for the trial court to weigh the testimony of the witnesses and determine whether such a conversation took place. This the court did and decided that issue against appellant. What the agreement was depends entirely upon the testimony of the cashier. There is no merit in the contention that appellant's president could not bind appellant by making the agreement as testified to by appellee's cashier.

We have carefully considered the testimony of the cashier of appellee upon the subject of this agreement in connection with all the other evidence as to the method of conducting the business by the interested parties, and while we might not have come to the same conclusion as was reached by the trial judge, we cannot say the facts proved and inferable therefrom are not sufficient to support the facts as found by the court. We therefore hold that the findings are supported by the evidence and that there was no error in overruling the motion for a new trial.

Judgment affirmed.